UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CHARLES KEULER, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

LTX-CREDENCE CORPORATION, DAVID G. TACELLI, MARK S. AIN, LORI HOLLAND, STEPHEN M. JENNINGS, BRUCE R. WRIGHT, ROGER W. BLETHEN, ROGER J. MAGGS, PING YANG, LOBSTER-1 MERGER CORPORATION and LOBSTER-2 MERGER CORPORATION,

Defendants.

No.

CLASS ACTION

COMPLAINT FOR BREACH OF FIDUCIARY DUTIES

Plaintiff, by his attorneys, alleges as follows:

## SUMMARY OF THE ACTION

1. This is a stockholder class action brought on behalf of the holders of LTX-Credence Corporation ("LTX-Credence" or the "Company") common stock against LTX-Credence's Board of Directors (the "Board") for breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to Verigy Ltd., a corporation organized under the laws of Singapore ("Verigy Ltd."), Alisier Limited, a corporation organized under the laws of Singapore ("Holdco"), Lobster-1 Merger Corporation, a Massachusetts corporation and a wholly-owned subsidiary of Verigy Ltd. ("Merger Sub-1"), and Lobster-2 Merger Corporation, a Massachusetts corporation and a wholly-owned subsidiary of Holdco ("Merger Sub-2") (together "Verigy"), pursuant to an unfair process and for an unfair price (the "Proposed Acquisition"). LTX-Credence and Merger Sub-1 and Merger Sub-2 aided and abetted these breaches of fiduciary duty. Indeed, in pursuing the unlawful plan to sell LTX-Credence to Verigy, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith and fair dealing.

2. Formed by the 2008 merger of LTX Corporation and Credence Systems Corporation, LTX-Credence is a global provider of focused, cost-optimized ATE solutions designed to enable customers to implement best-in-class test strategies to maximize their profitability. LTX-Credence serves the worldwide semiconductor industry, with a customer base including many of the world's leading integrated device manufacturers, fabless companies, test houses and subcontract manufacturers. LTX-Credence products are focused on the key segments of wireless, entertainment and automotive, and the core technologies within these markets. The Company's portfolio of test platforms includes Diamond, X-Series and ASL. Headquartered in Milpitas, California, LTX-Credence has approximately 650 employees and a presence in 15 countries around the world.

3. Formed by the 2006 spin-out from Agilent Technologies, Verigy designs, manufactures, sells, and services advanced test systems and solutions for the semiconductor industry. Verigy provides advanced semiconductor test systems and solutions used by leading companies worldwide in design validation, characterization and high-volume manufacturing test. Verigy offers scalable platforms for a wide range of system-on-chip ("SOC") test solutions, and memory test solutions for Flash, DRAM, including high speed memories, as well as multi-chip packages ("MCP"). Verigy also provides advanced analysis tools that accelerate design debug and yield ramp processes. Verigy's global headquarters are located in Singapore with U.S. headquarters and offices of the chief executive in Cupertino, California. Verigy has approximately 1,450 employees.

4. LTX-Credence's results from operations highlight the unfairness of the price being offered for LTX-Credence shares in the Proposed Acquisition. On September 1, 2010, the Company issued an earnings release reporting its financial results for the fourth quarter and fiscal year ended July 31, 2010. Sales for the 2010 fourth fiscal quarter were $73.1 million, up 30% from the prior quarter. For the 12-month period ended July 31, 2010, sales were $219 million, an increase of approximately 60% from the prior fiscal year. Defendant David G. Tacelli ("Tacelli"), Chief Executive Officer ("CEO") and President, commented:

> "***Our fourth quarter sales were strong, growing 30%*** over the third quarter. Our new market initiatives in microcontroller, general purpose wafer probe and precision analog testing are making a ***significant contribution to revenue growth***, even as some of the traditionally larger ***customers in our core markets have increased their capacity equipment purchases***. ***We shipped a record number of Diamond systems*** in the quarter and ***expect to ship another record number of units in the current quarter***. Over the past year, ***our performance has consistently met or exceeded expectations*** in gross margin, EBITDA performance and profitability."

5. On November 17, 2010, LTX-Credence entered into an Agreement and Plan of Merger (the "Merger Agreement") with Verigy Ltd., Holdco, Merger Sub-1 and Merger Sub-2. The Merger Agreement provides the terms and conditions pursuant to which Verigy and LTX-Credence have agreed to consummate the Proposed Acquisition. The Merger Agreement allows for two

possible scenarios to complete the Proposed Acquisition: (i) a reorganization whereby both Verigy and LTX-Credence will become wholly-owned subsidiaries of Holdco (the "Holdco Reorganization"); or (ii) a merger whereby LTX-Credence will become a wholly-owned subsidiary of Verigy Ltd. Each share of LTX-Credence common stock will be converted into the right to receive 0.96 ordinary shares of either Verigy Ltd. or Holdco, as the case may be, in the transaction. Immediately following the transaction, former LTX-Credence shareholders will own approximately 44% of the outstanding ordinary shares of either Verigy Ltd. or Holdco, as the case may be, with the remainder owned by current Verigy Ltd. shareholders. The Proposed Acquisition significantly undervalues LTX-Credence's intrinsic value and its value to Verigy, which expects to realize substantial synergies as a result of the deal.

6. In an investor conference call on November 17, 2010, Verigy acknowledged some of the value it will receive from the Proposed Acquisition:

> In the past we have been asked by the financial community if we would ever do a large acquisition or merger, and our response has been consistent. If we were to engage in this size of M&A activity, it would have to be strategic, financially attractive, and position us to compete more successfully in the long-term. We believe that this merger achieves these goals. This combination strengthens our competitive position and should allow us ***to realize significant cost synergies***.
>
> * * *
>
> We also expect the combined company to realize synergies of at least $25 million dollars within 12 months of closing. Additionally, we believe that the combined company will have ***the potential to achieve annual revenue of one billion dollars or more***.

7. The Proposed Acquisition is also the result of an unfair sales process designed to ensure that only Verigy has an opportunity to acquire the Company. For example, defendants agreed to preclusive deal protection devices in the Merger Agreement that create a playing field that is unfairly tilted in favor of Verigy and effectively chills any potential auction process for the Company, including:

- a "No Shop" provision that precludes the defendants from engaging in a fair process to sell the Company by seeking out the best possible price for LTX-Credence's shareholders, as their fiduciary duties require;
- a "Matching Rights" provision that requires LTX-Credence to give full information about competing acquisition proposals to Verigy and then allows Verigy three days to match any competing proposal, thus discouraging competing proposals;
- a "Termination Fee" provision whereby defendants agreed to pay Verigy $15 million in the event the Company receives a higher offer for the Company and its shareholders, despite the no shop provision; and
- standstill agreements that potentially prohibit competing bids.

8. The Board agreed to deliver the Company to Verigy in order to secure material benefits for themselves as a result of the Proposed Acquisition, including the accelerated vesting and monetization of illiquid equity holdings in the Company and change of control severance payments, which will provide tens of millions of dollars in gains to the Board and members of LTX-Credence's management.

9. In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches. Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Verigy, which efforts will eliminate the equity interest of LTX-Credence's public shareholders.

10. In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of LTX-Credence with Verigy on terms preferential to Verigy and defendants, and detrimental to plaintiff and LTX-Credence's shareholders. Plaintiff seeks to enjoin the Proposed Acquisition.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(l) and (2) in that plaintiff and defendants are citizens of different states or

subjects of a foreign state and the matter in controversy exceeds $75,000, exclusive of interest and costs. The Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Massachusetts, defendant LTX-Credence's state of incorporation, and thus may be maintained in federal court. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

12. This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391 because LTX-Credence is incorporated in Massachusetts and defendants include officers and/or directors of a Massachusetts corporation.

**PARTIES**

14. Plaintiff Charles Keuler is, and at all times relevant hereto was, a shareholder of LTX-Credence. Plaintiff is a resident of the state of Wisconsin.

15. Defendant LTX-Credence is a Massachusetts corporation headquartered in Milpitas, California. LTX-Credence is sued herein as an aider and abettor.

16. Defendant Tacelli is and at all times has been a director and the President and CEO of the Company. Tacelli is a resident of the state of Massachusetts.

17. Defendant Mark S. Ain ("Ain") is and has been a director of the Company at all relevant times. Ain is a resident of the state of Massachusetts.

18. Defendant Lori Holland ("Holland") is and has been a director of the Company at all relevant times. Holland is a resident of the state of Idaho.

19. Defendant Stephen M. Jennings ("Jennings") is and has been a director of the Company at all relevant times. Jennings is a resident of the state of Massachusetts.

20. Defendant Bruce R. Wright ("Wright") is and has been a director of the Company at all relevant times. Wright is a resident of the state of California.

21. Defendant Roger W. Blethen ("Blethen") is and has been a director of the Company at all relevant times, and presently serves as its Chairman of the Board. Blethen is a resident of the state of Massachusetts.

22. Defendant Roger J. Maggs is and has been a director of the Company at all relevant times. Maggs is a resident of Canada.

23. Defendant Ping Yang ("Yang") is and has been a director of the Company at all relevant times. Yang is a resident of the state of Texas.

24. Defendant Lobster-1 Merger Corporation is a Massachusetts corporation and a wholly-owned subsidiary of Verigy Ltd., and is sued herein as an aider and abettor.

25. Defendant Lobster-2 Merger Corporation is a Massachusetts corporation and a wholly-owned subsidiary of Holdco, and is sued herein as an aider and abettor.

26. The defendants named above in ¶¶16-23 are sometimes collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public holders of LTX-Credence stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

28. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

29. The Class is so numerous that joinder of all members is impracticable. According to LTX-Credence's SEC filings, as of October 10, 2010, there were more than 49.2 million shares of LTX-Credence common stock outstanding.

30. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

(a) whether defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(b) whether defendants are engaging in self-dealing in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(c) whether defendants have breached their fiduciary duty to secure and obtain the best value reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Acquisition, and/or are aiding and abetting therein;

(d) whether defendants are unjustly enriching themselves and other insiders or affiliates of LTX-Credence and/or Verigy, and/or are aiding and abetting therein;

(e) whether defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, candor and fair dealing, and/or are aiding and abetting therein;

(f) whether defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets, and/or have aided and abetted therein;

(g) whether the Proposed Acquisition compensation payable to plaintiff and the Class is unfair and inadequate; and

(h) whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

31. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

32. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

33. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

34. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE PROPOSED ACQUISITION**

36. This is a stockholder class action brought on behalf of the holders of LTX-Credence common stock against the Company's Board for breaches of fiduciary duty and/or other violations of state law arising out of defendants' efforts to complete the sale of the Company to Verigy Ltd. LTX-Credence and Merger Sub-1 and Merger Sub-2 aided and abetted these breaches of fiduciary duty. Indeed, in pursuing the unlawful plan to sell LTX-Credence to Verigy, each of the defendants

violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith and fair dealing.

37. Formed by the 2008 merger of LTX Corporation and Credence Systems Corporation, LTX-Credence is a global provider of focused, cost-optimized ATE solutions designed to enable customers to implement best-in-class test strategies to maximize their profitability. LTX-Credence serves the worldwide semiconductor industry, with a customer base including many of the world's leading integrated device manufacturers, fabless companies, test houses and subcontract manufacturers. The Company's portfolio of test platforms includes Diamond, X-Series and ASL. Headquartered in Milpitas, California, LTX-Credence has approximately 650 employees and a presence in 15 countries around the world.

38. Formed by the 2006 spin-out from Agilent Technologies, Verigy designs, manufactures, sells, and services advanced test systems and solutions for the semiconductor industry. Verigy provides advanced semiconductor test systems and solutions used by leading companies worldwide in design validation, characterization and high-volume manufacturing test. Verigy offers scalable platforms for a wide range of SOC test solutions, and memory test solutions for Flash, DRAM, including high speed memories, as well as MCP. Verigy also provides advanced analysis tools that accelerate design debug and yield ramp processes.

39. LTX-Credence's results from operations highlight the unfairness of the price being offered for LTX-Credence shares in the Proposed Acquisition. On September 1, 2010, LTX-Credence issued an earnings release reporting its financial results for the fourth quarter and fiscal year ended July 31, 2010. Sales for the 2010 fourth fiscal quarter were $73.1 million, up 30% from the prior quarter. For the 12-month period ended July 31, 2010, sales were $219 million, an increase of approximately 60% from the prior fiscal year. Defendant Tacelli commented:

> "***Our fourth quarter sales were strong, growing 30%*** over the third quarter. Our new market initiatives in microcontroller, general purpose wafer probe and precision

> analog testing are making a ***significant contribution to revenue growth***, even as some of the traditionally larger ***customers in our core markets have increased their capacity equipment purchases***. ***We shipped a record number of Diamond systems*** in the quarter and ***expect to ship another record number of units in the current quarter***. Over the past year, ***our performance has consistently met or exceeded expectations*** in gross margin, EBITDA performance and profitability."

LTX-Credence's September 1, 2010 press release stated in pertinent part:

> **LTX-Credence Announces Fourth Quarter and Fiscal Year Results**
>
> LTX-Credence Corporation, a global provider of focused, cost-optimized ATE solutions, today announced financial results for its fourth quarter and fiscal year ended July 31, 2010.
>
> Sales for the 2010 fourth fiscal quarter were $73,163,000, up 30% from the prior quarter. Net income for the quarter was $14,116,000, or $0.09 per diluted share on a GAAP basis. Excluding the net impact of special items totaling $378,000, and amortization of purchased intangible assets of $2,664,000, the net income for the quarter was $17,158,000, or $0.11 per diluted share on a non-GAAP basis.
>
> For the twelve-month period ended July 31, 2010, sales were $219,082,000, an increase of approximately 60% from the prior fiscal year. Net income was $18,564,000, or $0.13 per diluted share on a GAAP basis. Excluding the net impact of special items totaling $(1,645,000), and amortization of purchased intangible assets of $10,655,000, the net income for the year was $27,574,000, or $0.19 per diluted share on a non-GAAP basis.
>
> Dave Tacelli, chief executive officer and president, commented, "Our fourth quarter sales were strong, growing 30% over the third quarter. Our new market initiatives in microcontroller, general purpose wafer probe and precision analog testing are making a significant contribution to revenue growth, even as some of the traditionally larger customers in our core markets have increased their capacity equipment purchases. We shipped a record number of Diamond systems in the quarter and expect to ship another record number of units in the current quarter. Over the past year, our performance has consistently met or exceeded expectations in gross margin, EBITDA performance and profitability."
>
> **First Quarter Fiscal 2011 Outlook**
>
> For the quarter ending October 31, 2010, revenue is expected to be in the range of $75 million to $80 million. The non-GAAP net income is expected to be $0.11 to $0.13 per diluted share, assuming 150 million diluted shares outstanding. The non-GAAP net income guidance excludes amortization of purchased intangible assets of $1.5 million.

40. On November 17, 2010, LTX-Credence entered into the Merger Agreement with Verigy Ltd., Holdco, Merger Sub-1 and Merger Sub-2. The Merger Agreement provides the terms

and conditions pursuant to which Verigy and LTX-Credence have agreed to consummate the Proposed Acquisition. The Merger Agreement allows for two possible scenarios to complete the Proposed Acquisition: (i) a reorganization whereby both Verigy and LTX-Credence will become wholly-owned subsidiaries of Holdco; or (ii) a merger whereby LTX-Credence will become a wholly-owned subsidiary of Verigy Ltd. Each share of LTX-Credence common stock will be converted into the right to receive 0.96 ordinary shares of either Verigy Ltd. or Holdco, as the case may be, in the transaction. Immediately following the transaction, former LTX-Credence shareholders will own approximately 44% of the outstanding ordinary shares of either Verigy Ltd. or Holdco, as the case may be, with the remainder owned by current Verigy Ltd. shareholders. The Proposed Acquisition significantly undervalues LTX-Credence's intrinsic value and its value to Verigy, which expects to realize substantial synergies as a result of the deal.

41. On November 18, 2010, LTX-Credence and Verigy announced the Proposed Acquisition in a joint press release, which stated in pertinent part:

> **Verigy and LTX-Credence to Merge, Creating a Leader in Semiconductor Test Solutions**
>
> * * *
>
> - Adds scale with increased presence in attractive SOC test market
> - Combines highly complementary products, markets, customers and channels
> - Expects annualized synergies of at least $25 million, following the completion of the integration
> - Verigy announces odd-lot and share repurchase programs and holding company reorganization
>
> Verigy and LTX-Credence Corporation today announced that they have entered into a definitive merger agreement that would create a semiconductor test company with the scale and presence to provide comprehensive solutions to customers across most major semiconductor market segments. The combined company, to be called Verigy, will feature a portfolio of leading semiconductor test systems consisting of innovative and cost-optimized test platforms that address the broad, divergent requirements of the wireless, graphics, computing, automotive, industrial, and entertainment markets.

With an expanded product portfolio, strong share position in target segments and large support network through a direct support team and key strategic partners such as Spirox in Taiwan and China, the new Verigy expects to be well-positioned to deliver significant value to customers, shareholders and employees. By combining two of the industry's most highly skilled and experienced R&D teams under a common focus and direction, Verigy anticipates creating a stronger, more competitive innovator of test cell solutions that enable semiconductor manufacturers to meet time-to-market and cost-of-test demands.

Verigy president and COO, Jorge Titinger, and LTX-Credence president and CEO, David Tacelli, will serve as co-CEOs of the new company, which will be headquartered in Singapore with U.S. headquarters in Cupertino, California. Verigy chairman and CEO, Keith Barnes, will continue as the chairman of the board of directors, which will be comprised of 12 members, seven designated by Verigy and five by LTX-Credence. Furthermore, to facilitate the leadership change, Keith Barnes will transition from Verigy CEO to Verigy chairman of the board of directors as of Dec. 31, 2010, and Jorge Titinger will be promoted to Verigy CEO and president.

"The two companies share a long legacy of innovation in test solutions that meet customers' technology needs and enable them to maximize profitability and competitiveness," said Keith Barnes, Verigy chairman and CEO. "By joining forces, we expect the combined scale to strengthen our global presence, realize significant synergies and provide substantial benefits to our customers, shareholders and employees."

"Verigy has a well-established presence in the high-performance digital, complex mixed-signal and RF-SOC segments while LTX-Credence has a broad SOC market footprint and expertise in cost-optimized solutions," said Jorge Titinger, Verigy president and COO. "We expect the combination will enable the new Verigy to drive sustainable long-term growth and shareholder value through the expansion of our product and technology portfolio as well as our existing customer relationships. We are very excited by the possibilities that this new company represents."

"Strategically, the complementary fit of Verigy and LTX-Credence makes us ideal merger partners, and we believe this combination will position the new Verigy for market leadership in the semiconductor test industry," said David Tacelli, LTX-Credence president and CEO. "We look forward to working together to build a new company structured for consistent, strong financial performance."

**Transaction Terms**

Under the terms of the agreement, the transaction will either be effected through a reorganization where Verigy and LTX- Credence would be wholly owned subsidiaries of Holdco, a newly created subsidiary, or through a merger where LTX-Credence would become a wholly owned subsidiary of Verigy. LTX-Credence shareholders will receive a fixed exchange ratio of 0.96 shares of Verigy stock or

> Holdco stock for each share of LTX-Credence stock. Upon closing, Verigy or Holdco, as applicable, will issue approximately 49 million shares on a fully diluted basis to complete the transaction. At that time, Verigy and LTX- Credence shareholders will own approximately 56 percent and 44 percent, respectively, of the combined company.
>
> The combined company also expects to realize substantial synergies within one year of the close of the deal, with annual costsavings expected to reach at least $25 million, primarily from increased efficiencies in manufacturing and reduced operating expenses.
>
> The transaction is subject to the approval of shareholders from both companies as well as other customary closing conditions and regulatory approvals. The companies expect the transaction to close in the first half of calendar 2011.
>
> Shares of the combined company will trade on the NASDAQ under the symbol "VRGY." Morgan Stanley acted as financial advisor and Wilson Sonsini Goodrich & Rosati acted as legal counsel to Verigy. J.P. Morgan acted as financial advisor and WilmerHale acted as legal counsel to LTX-Credence.

42. In an investor conference call on November 17, 2010, Verigy acknowledged some of the value it will receive from the Proposed Acquisition:

> In the past we have been asked by the financial community if we would ever do a large acquisition or merger, and our response has been consistent. If we were to engage in this size of M&A activity, it would have to be strategic, financially attractive, and position us to compete more successfully in the long-term. We believe that this merger achieves these goals. This combination strengthens our competitive position and should allow us ***to realize significant cost synergies***.
>
> * * *
>
> We also expect the combined company to realize synergies of at least $25 million dollars within 12 months of closing. Additionally, we believe that the combined company will have ***the potential to achieve annual revenue of one billion dollars or more***.

43. The Proposed Acquisition is also the result of an unfair sales process designed to ensure that only Verigy has an opportunity to acquire the Company. For example, defendants agreed to preclusive deal protection devices in the Merger Agreement that create a playing field that is unfairly tilted in favor of Verigy and effectively chills any potential auction process for the Company, including:

- a "No Shop" provision that precludes the defendants from engaging in a fair process to sell the Company by seeking out the best possible price for LTX-Credence's shareholders, as their fiduciary duties require;
- a "Matching Rights" provision that requires LTX-Credence to give full information about competing acquisition proposals to Verigy and then allows Verigy three days to match any competing proposal, thus discouraging competing proposals;
- a "Termination Fee" provision whereby defendants agreed to pay Verigy $15 million in the event the Company receives a higher offer for the Company and its shareholders, despite the no shop provision; and
- standstill agreements that potentially prohibit competing bids.

44. The Board agreed to deliver the Company to Verigy in order to secure material benefits for themselves as a result of the Proposed Acquisition, including the accelerated vesting and monetization of illiquid equity holdings in the Company and change of control severance payments, which will provide tens of millions of dollars in gains to the Board and members of LTX-Credence's management.

45. In sum, by agreeing to the Proposed Acquisition, each of the defendants has breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches. Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to aggrandize their own personal interests and to meet the specific needs of Verigy, which efforts will eliminate the equity interest of LTX-Credence's public shareholders.

46. In essence, the Proposed Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of LTX-Credence with Verigy, on terms preferential to Verigy and defendants, and detrimental to plaintiff and LTX-Credence's shareholders. Defendants' concern was not the maximization of shareholder value, as it was required by law to be. As a result of defendants' actions, plaintiff and the Class will suffer irreparable injury, as aforesaid. Plaintiff and the other members of the Class have no adequate remedy at law. Plaintiff seeks to enjoin the Proposed Acquisition.

**DEFENDANTS' FIDUCIARY DUTIES**

47. In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors may not take any action that:

(a) adversely affects the value provided to the corporation's shareholders;

(b) will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c) contractually prohibits them from complying with their fiduciary duties;

(d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e) will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

48. In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of LTX-Credence, are obligated to refrain from:

(a) participating in any transaction where the directors' or officers' loyalties are divided;

(b) participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c) unjustly enriching themselves at the expense or to the detriment of the public shareholders.

49. Plaintiff alleges herein that defendants, separately and together, in connection with the Proposed Acquisition, violated and/or aided and abetted in the violation of fiduciary duties owed to plaintiff and the other public shareholders of LTX-Credence, including the duties of loyalty, good faith, candor, due care and independence. As a result of these breaches of fiduciary duties and the aiding and abetting therein, neither plaintiff nor the Class will receive adequate or fair value for their LTX-Credence common stock in the Proposed Acquisition.

50. Because defendants have breached their duties of due care, loyalty and good faith in connection with the Proposed Acquisition, and/or have aided and abetted therein, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## COUNT

### Claim for Breach of Fiduciary Duties and Aiding and Abetting Against All Defendants

51. Plaintiff repeats and realleges each allegation set forth herein.

52. The Individual Defendants, aided and abetted by the Company and Merger Sub-1 and Merger Sub-2, have knowingly or recklessly and in bad faith violated their fiduciary duties of care, loyalty, candor, good faith, and independence owed to the public shareholders of LTX-Credence and have acted to put their personal interests ahead of the interests of LTX-Credence's shareholders.

53. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in LTX-Credence.

54. The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to LTX-Credence's shareholders. LTX-Credence and Merger Sub-1 and Merger Sub-2

aided and abetted the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other holders of LTX-Credence stock.

55. As demonstrated by the allegations above, the Individual Defendants knowingly or recklessly and in bad faith failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of LTX-Credence because, among other reasons, they failed to ensure a fair process and maximization of shareholder value.

56. Because the Individual Defendants dominate and control the business and corporate affairs of LTX-Credence, and are in possession of private corporate information concerning LTX-Credence's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of LTX-Credence which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

57. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

58. As a result of the actions of defendants, plaintiff and the Class have been and will be irreparably harmed.

59. Unless the Proposed Acquisition is enjoined by the Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition's terms, and will not supply to LTX-Credence's shareholders sufficient information to enable them to make informed decisions regarding the tender of their shares in connection with the Proposed

Acquisition, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

60. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties of the defendants and is therefore unlawful and unenforceable;

C. Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D. Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of LTX-Credence's shareholders and to refrain from entering into any transaction until the process for the sale or merger of the Company is completed and the highest possible value is obtained;

E. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

F. Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

DATED: November 30th, 2010

PARTRIDGE, ANKNER & HORSTMANN, LLP

PETER CHARLES HORSTMANN, BBO # 556377
The Berkley Building
200 Berkley Street, 16th Floor
Boston, MA 02116
Telephone: 617/859-9999
617/686-6181 (fax)
tka@anknerlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
DAVID A. KNOTTS
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
8117 Preston Road, Suite 300
Dallas, TX 75225
Telephone: 214/706-9314
214/706-9315 (fax)

POWERS TAYLOR LLP
PATRICK W. POWERS
Campbell Centre II
8150 North Central Expressway, Suite 1575
Dallas, TX 75206
Telephone: 214/239-8900
214/239-8901 (fax)

Attorneys for Plaintiff

S:\CptDraft\Deal\Cpt FED LTX Credence.doc